(Del. Rev. 12/98)

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 MAY -9 PM 3:20

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

DEBRA-ANN WELLMAN (PRO SE)

(Name of Plaintiff or Plaintiffs)

v.                    CIVIL ACTION No. 05-280

THE DOW CHEMICAL COMPANY

(Name of Defendant or Defendants)

## COMPLAINT UNDER TITLE VII

## OF THE CIVIL RIGHTS ACT OF 1964

1. This action is brought pursuant to *Title VII of the Civil Rights Act of 1964*, as amended, for **employment discrimination**. Jurisdiction exists by virtue of 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2. Plaintiff resides at P.O. BOX 4395 (MAILING ADDRESS)
   (Street Address)
   GREENVILLE   NEW CASTLE   DE   19807
   (City)        (County)     (State) (Zip Code)
   302-886-7055
   (Area Code) (Phone Number)

3. Defendant resides at, or its business is located at 2030 DOW CHEMICAL CENTER
   (Street Address)
   MIDLAND         MI    48674
   (City)   (County) (State) (Zip Code)

4. The discriminatory conduct occurred in connection with plaintiff's employment at, or application to be employed at, defendant's DUPONT DOW ELASTOMERS LLC place of business (TRADING AS: DUPONT HIGH PERFORMANCE ELASTOMERS LLC) located at 300 BELLEVUE PARKWAY - SUITE 300
   (Street Address)
   WILMINGTON   NEW CASTLE   DE   19809
   (City)       (County)    (State) (Zip Code)

   DUPONT DOW ELASTOMERS LLC (TRADING AS: DUPONT HIGH PERFORMANCE ELASTOMERS LLC)
   1 INNOVATION WAY
   DELAWARE TECHNOLOGY PARK
   NEWARK, DE 19711

(All attached EEOC documents)
These incidents occurred in the years (2001 and 2002)

5. The alleged discriminatory acts occurred on _____ (Day), _____ (Month), _____ (Year)

6. The alleged discriminatory practice ⊙ is (⊙) is not continuing.

7. Plaintiff filed charges with the Department of Labor of the State of Delaware,
DOL (Agency)   4425 N. Market Street (Street Address)   Wilmington (City)
NEW CASTLE (County)   DE (State)   19809 (Zip Code), regarding
defendant's alleged discriminatory conduct on _____ (Day), _____ (Month), _____ (Year)
These incidents occurred in the years (2001 and 2002).

8. Plaintiff filed charges with the Equal Employment opportunity Commission of the United States regarding defendant's alleged discriminatory conduct on: 15th (Day), August (Month), 2002 (Year)

9. The Equal Employment Opportunity Commission issued the attached Notice-of-Right-to-Sue letter which was received by plaintiff on: 23rd (Day), February (Month), 2005 (Year)

(NOTE: ATTACH NOTICE-OF-RIGHT-TO-SUE LETTER TO THIS COMPLAINT.)

10. The alleged discriminatory acts, in this suit, concern:

   A. ⊙ Failure to employ plaintiff.
   (B.) ⊙ Termination of plaintiff's employment.
   C. ⊙ Failure to promote plaintiff.
   D. ⊙ Other acts (please specify below)

Discriminated against by being sexually harassed, given a poor evaluation, subjected to unwelcome advances, forced to work in a hostile environment, harassed and forced to leave my position because of my sex (female), lost wages and pension, forced to liquidate assets. In violation of Title VII of the Civil Rights Act of 1964, as amended (see attached document) and Title I of the Americans with Disabilities Act of 1990 as amended. Retaliation because I sought help from the EEOC, I was removed from my position while on disability. I am requesting legal

11. Defendant's conduct is discriminatory with respect to the following:
    A. ○ Plaintiff's race
    B. ○ Plaintiff's color
    (C.) ○ Plaintiff's sex
    D. ○ Plaintiff's religion
    E. ○ Plaintiff's national origin

12. A copy of the charges filed with the Equal Employment Opportunity Commission is attached to this complaint and is submitted as a brief statement of the facts of plaintiff's claim. *See attached*

13. If relief is not granted, plaintiffs will be irreparably denied rights secured by Title VII of the 1964 CivilRights Act, as amended.

14. Plaintiff's has no adequate remedy at law to redress the wrongs described above.

***THEREFORE*, Plaintiff prays as follows: (Check appropriate letter(s))**

   A. ○ That all fees, cost or security attendant to this litigation be hereby waived.
   (B) ○ That the Court appoint legal counsel.
   (C) ○ That the Court grant such relief as may be appropriate, including injunctive orders, damages, cost and attorney's fees.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: *May 9, 2005*

*Debra-Ran Wellman*
(Signature of Plaintiff)

_____
(Signature of additional Plaintiff)

# CHARGE OF DISCRIMINATION

| | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | [ ] FEPA<br>[X] EEOC | AMENDMENT<br>170A201954 |

_____ 8.0 and EEOC
State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Debra-Ann Wellman | (302) 575-1565 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| P.O. Box 4395, Greenville, DE 19807 | | 11/13/1951 |

STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| The Dow Chemical Company | Cat D (501 +) | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 2030 Dow Center, Midland, MI 48674 | | 111 |

| NAME | | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| | | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN
[X] RETALIATION   [ ] AGE   [X] DISABILITY   [ ] OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST: 07/01/2001   LATEST: 08/26/2002
[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):

I have been employed by the DuPont Company since 1986 as an Administrative Assistant. In or around 1996, Dow Chemical Company and DuPont Company established a Joint Venture called DuPont Dow Elastomers - Joint Venture. Upon establishing the Joint Venture, it was my understanding that each company would maintain the employment records of its own employees who volunteered to work for Joint Venture. It was further my understanding that an employee who volunteered for a position with the Joint Venture could always return to his/her parent company (the company from which he/she came). From the beginning of my employment with the Joint Venture, the supervisors and managers were employed by Dow and most of my co-workers were DuPont employees. I began working for the Joint Venture and from that time until February 9, 2002, I received no unsatisfactory performance evaluation and, in fact, was promoted one full level and went to work for the Sales and Marketing Team at Delaware Technology Park as an Administrative Assistant/Office Manager. From in or around July 2001 until February 11, 2002, when I was forced to go out on disability, I was subjected to periodic sexual harassment, a degrading environment, subjected to unwelcome sexual advances from my supervisors and harassment based on my sex, including the following incidents:

1) In or around the first week of July 2001, I received a telephone call from a manager from DuPont telling me to "watch out you have Mr.

** Text is Continued on Attached Sheet(s) **

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements)<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>10/1/02  _Debra-Ann Wellman_ (signature)<br>Date       Charging Party (Signature) | SIGNATURE OF COMPLAINANT<br><br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Month, day and year) |

EEOC FORM 5 (Rev. 07/99)

Oct  3 06:42 2002  CP Initials [signature]  Chg # 170A201954, Attachment Page 1
                                                           AMENDMENT

---

Equal Employment Opportunity Commission
Form 5 - Charge of Discrimination, Additional Text

---

Sensitivity (Paul R. Graves, Dow employee) and Medusa (Mary Ann Price, DuPont employee)...because they are known trouble makers." Mr. Graves shook my hand so hard that I called out "Ouch, you are going to break the bones in my hand." He said, "Oh so you're Deb, I should have known."

2) On July 20, 2001, I was ordered by Mr. Graves and Ms. Price that I go out to lunch to celebrate Nesha MacMurdo's (DuPont employee) missed birthday. I indicated that I would normally cover the phone. Mr. Graves said, "Get your cell phone and go now!" Mr. Graves started asking me personal questions such as: "How many people are in your family? How many brothers and sisters do you have? Did your mother work? Where did your father work? Are your parents alive? Did they stay married? Were you ever married before? Are you dating? What do you do for entertainment? Where do your brother and sister live? What are their professions? How many children do they have? Are you close to your nieces and nephews? How long have you work for DuPont? What departments at DuPont have you worked in? I finally said now wait a minute I thought this was a celebration for Nesha and you have been doing nothing but batting out the questions to me about my personal life. Why don't you ask the other's questions?" Mr. Graves glared at me and said, "I didn't know I was making you uncomfortable." I said, "You are not making me uncomfortable, but you're really firing out questions to me alone and not interacting with the rest of your luncheon guests, and I think you should give them a chance to answer some of your near and dear to the heart questions."

3) On July 30, 2001, I was told by Mr. Graves not to lock any of my cabinets or desk. I was the only employee asked to keep my desk, cabinets and filing cabinets open at all times, although this was not "site security rules".

4) On August 3, 2001 - Mr. Graves scheduled a meeting in his office with me on a one-on-one basis. Mr. Graves slammed the door very hard and walked behind his desk to look at his computer screen, and look through papers. I sat in a guess chair around the table in his room. Mr. Graves took a phone call and turned around to look at me while he was talking to caller stating, "I know what to do, she will understand when I am done with her. No, I am not afraid to do this. Thanks for the call, I will speak with you later." Mr. Graves walked around the table and sat down at the opposite side of the table from me. I handed him my job description to Mr. Graves and said, "Here is a copy of my job account abilities/responsibilities, and most of the duties that I perform here at Kalrez." Mr. Graves threw the papers back at me and said "I don't care what you do here." Mr. Graves then answered his cell phone and was

Oct  3 06:42 2002  CP Initials _____  Chg # 170A201954, Attachment Page 2
                                               AMENDMENT

staring/glaring at me very hard and stating to the caller. "Yes it is started and I did not have a chance to ask those questions yet. "Okay, call me back." Mr. Graves then states, "I understand that there are people here at Kalrez that talk about people, and I understand you are one of them. I know you are a gossip." I stated, "What are you talking about? I do not know what you mean. Please be more specific." Mr. Graves said, "If I ever hear you talking about anyone. I will knock you back so hard that you will not know what hit you." I said, "That is a threat Sir, and why are you speaking to me this way." Mr. Graves stated, "Because I can."

5) On August 13, 2001, I am in my office and Mr. Graves comes in and asks that I show him something in the Kalrez Literature Room. Mr. Graves states, "I want you to straighten it up in here. Tell me what all of this stuff is in here. I state, "In the back area here these binders, books, videos, documents, etc. are the Kalrez Applications Engineer's items. Mr. Graves states, "Well I want to move these binders from here to here." Here to here meant from a lower shelf to a much higher shelf. I said "Okay, I can do that, but not today." Mr. Graves said "Why" I said, "I am not dressed to move those items to that higher area in the Literature Room today. I will do this an Friday. Mr. Graves states, "No, I can help you move them today." And he now moves the Kalrez Library Ladder toward me and extends his arm for me to climb up the 3 steps.  I could see Mr. Graves looking up my dress and smiling at me. I was wearing a blouse, skirt and pumps that day. I move about six (6) binders and said I had to go do something back in my office and I would move the rest of the binders later. Mr. Graves stated, "If you need anymore help just let me know," Mr. Graves was rocking back and forth and smiling from ear to ear. I left the room very disgusted.

6) On August 23, 2001 - Mr. Graves comes into my office to talk about distributor contracts. Mr. Graves never sits in my guess chair, but stands at the filing cabinet and looms over me. He has  a pen in his hand and is talking and waving it back and forth and it finally come out of his hand and goes under my desk. I have to crawl on my hands and knees under the desk because it has gone toward the back of the desk. His pen continues to come out of his hand four (4) more times. I am crawling under the desk each time to retrieve.  Mr. Graves never looks at me when he talks to me just stares at my chest. I pick up the pen for the fourth time and hand it to him and he is now laughing/snickering. I said, "What is so  funny?" Mr. Graves states, " I am enjoying this." I ask him to put the pen down and ask his questions and Mr. Graves says, "That's okay, I'm done." And he leaves my office.

7) On September 26, 2001, I am in the kitchen are in the morning and Mr. Graves comes into this area. I am pouring my coffee in my cup and I now feel him behind me touching me with his body.  Mr. Graves states "Here I need mine filled up." I pour the coffee, and leave the kitchen area, very disgusted.

Oct  3 06:42 2002   CP Initials _[signature]_   Chg # 170A201954, Attachment Page 3
                                                                AMENDMENT

8) On November 2, 2001, it was Friday and normally I am dressed down, but I had a dinner to go to after work, so I was dressed in a dress and pumps. Mr. Graves stated that he was not busy at the time and he could help me move the boxes now. I said okay, and get the library ladder and started to pick up the boxes to hand to him and he said, "No you go up on the ladder." I knew what he was doing with looking up my dress again, and I told him that men have more upper arm strength to lift heavy items over their head, and would he mind standing on the ladder. Mr. Graves demanded that I climb the ladder while he stood below me and made the following statements: "Now that wasn't that bad was it? You need to lighten up, Deb. You are too uptight. You'll never get what you want if you don't give a little. I guess I've lost my opportunity to be with you, haven't I? You do not know how much you turn me on. Oh that's right you only date men from DuPont." I did not say one word, since any past interaction with Mr. Graves always-turned into anger and aggression by Mr. Graves.

9) On December 7, 2001 - Mr. Graves comes into my office and starts asking me questions about, when I had Steve Metaxas(Dow employee) and Karen Cronin(unknown whether Dow or DuPont employee) review my job for re-leveling. I explained that Karen Cronin came back and stated that my job is leveled properly. Then Steve Metaxas came to me and told me the very same thing and also expressed that I should not have gone to Human Resources(HR) to have this request done. I should have come to him. Mr. Graves states, "I am in agreement with Steve. I do not think you do a good enough job here to warrant a re-leveling." The entire time he is rocking his groin area back and forth asking me "Do you understand be Deb, you are not yet ready for a promotion?" I said "You know Paul, Steve Metaxas did the exact same thing to me when he told me I was not ready for a promotion yet, and did I understand what he meant also. I said, "Well, T get it loud and clear f rom both of you, and I am not stooping to that to get a promotion from you or anyone else." Mr. Graves states, "It would make it a lot simpler, Deb, do you understand?" I said, "Get out of my office now and I mean it."

10) On December 13, 2001, Mr. Graves comes up behind me in the Literature Room and rubs himself against me. I jump to the side and move away and look at him right in the eye and say, "Hey what are your doing?" Mr. Graves just smiles and leaves the room.

11) On January 3, 2002, I arrive in Mr. Graves' office to have my DOC he cancels the meeting, because he said he did not receive the document that I sent to him. I said, "I sent them to you via e-mail. And you knew I came back from Holiday vacation early to have this meeting with you." Mr. Graves states, "Well, isn't that a shame, now reschedule the meeting with Mary Ann. You wouldn't have wanted to have your DOC with me prior to your Christmas Holiday anyway, because you would have been very depressed. Make it for a few weeks from now. I told you to cooperate Deb, didn't I? When will you learn?" Mr. Graves stood up and was adjusting his trousers, grossly tucking in shirt in his pant, and

Oct  3 06:42 2002   CP Initials [signature]  Chg # 170A201954, Attachment Page 4
                                             AMENDMENT

shaking his belt area and looking at his crotch and looking back at me. I exit Mr. Graves' office. The gross action of adjusting the pants and grabbing the belt area, and the groin movements were a Steve Metaxas tactics also.

12) On January 16, 2002, I was called into Mr. Graves' thinking that I was going to go over my DOC and all he could do was rant and rave about who I knew at DuPont and that there was nothing I could do to improve. I am becoming very upset and scared, because the atmosphere is horrible and unprofessional. I asked "Why are you doing this to me?" Mr. Graves stated, "Because I can. I am the boss and just sit there and stop interrupting me." I am now slowly pushing my chair back to get away from him, because I am really scared of his cruel behavior. As soon as he sees me moving back he jumps up and puts his right arm and grabs the opposite side of the chair and jerks it very hard and his arm is now across my chest area and he is pressing very hard, and I am pushing my chair back and he continues to rub his arm across my chest and this went on for a few minutes. Until I moved his fore arm up and put both my hands over my chest and said "Now wait a minute you have gone well over the line and get your arm off my breasts." Mr. Graves just smiled in my face and came even closer to me and I pulled my head away. I stood up quickly to move my chair back totally away from him. Mr. Graves stood up very quickly and jammed his nose in my left ear and said, "I knew what you were the first time I saw you." I said, "And what was that?" Mr. Graves said, "I know what you are, you're a spy for DuPont."

13) On February 4, 2002, Mr. Graves comes into my office and asks me about signing my DOC. I said, "I will not sign that document." Mr. Graves starts to walk out of my office and says "You will never learn will you Deb? Do what I tell you to do." I do not respond to Mr. Graves.

14) On February 7, 2002, Mr. Graves walks in to my office and states, "I was just talking to Rick Bond(Dow employee) about your job and we are canceling the Kalrez Incentive Trip, and we don't feel we have a place here for you at Kalrez." I said, "Paul, the Incentive Trip is just a third of my job, what do you mean you do not have a place for me at Kalrez, there is plenty of work here to do.' I do not say any more, because I know I am going to EAP at DuPont to report this situation. Michael Sherman calls me and states, "How are you doing?" I respond "Okay." Michael says, "Just okay?" I said, "Yes, just okay." Michael Sherman(DuPont employee) then says, "Well, I called to tell you that I am probably pulling you from your job, on Monday (February 11, 2002) you will call out sick on Monday morning and we will remove the victim from your boss. I said, "Okay is this normal procedure? Because I have never used the EAP system before." Michael Sherman states "Well, you don't want to stick your hand back in the meat grinder again do you?' I said, "No."

15) On February 11, 2002, I was forced to leave my position and go on

Oct  3 06:42 2002   CP Initials [signature]   Chg # 170A201954, Attachment Page 5
AMENDMENT

disability.

16) On August 26, 2002, I was discharged.

I believe that I have been discriminated against by being sexually harassed, given a poor evaluation, subjected to unwelcome advances, forced to work in a hostile environment, harassed, forced to leave my position on disability and retaliated against by being discharged all because of my sex(female) and disability in violation of Title VII of the Civil Rights Act of 1964, as amended and Title I of the Americans with Disabilities Act of 1990, as amended.

EEOC Form 161 (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

8 0

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: Ms. Debra-Ann Wellman<br>P.O. Box 4395<br>Greenville, DE 19807 | From: Equal Employment Opportunity Commission<br>Philadelphia District Office<br>The Bourse<br>21 S. Fifth Street, Suite 400<br>Philadelphia, PA 19106-2515 |

[ ]  On behalf of person(s) aggrieved whose identity is
     CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 170-2002-01954 (formerly 170A201954) | Legal Unit | (215) 440-2828 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[ ]  We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[x]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

- NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS from your receipt of this Notice**; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____        February 23, 2005
Marie M. Tomasso, District Director        (Date Mailed)

Enclosure(s)

cc:  Jeffrey S. Koehlinger, Esq. (For Respondent Dow Chemical Co.)

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/96 to 12/1/96, you should file suit before 7/1/98 -- *not* 12/1/98 -- in order to recover unpaid wages due for July 1996. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA backpay recovery period.

ATTORNEY REPRESENTATION -- **Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*